**IIN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **VALERIE STRUTHERS, as Next Friend on behalf of her minor son, E.S., and in her individual capacity,** | ) | |
| **Plaintiffs,** | ) | **Case No. 25-cv-01924** |
| **vs.** | ) | |
| **CARBONDALE COMMUNITY HIGH SCHOOL DISTRICT 165, BOARD OF EDUCATION,** | ) | |
| **Defendant.** | | |

**<u>MEMORANDUM & ORDER</u>**

**DUGAN, District Judge:**

E.S. alleges that Carbondale Community High School District 165 (the District) denied him the accommodations he needed to participate in its educational programs. His mother, Valerie Struthers, also alleges that the District excluded her from educational meetings and cut off communications after she advocated for him. They bring claims under federal and Illinois disability discrimination laws. The District moves to dismiss the First Amended Complaint or, alternatively, to strike allegations and requests for relief. (Doc. 24).

## I. Background

E.S. is a minor who lives with his mother, Struthers, inside District 165. He has diagnosed disabilities affecting learning and communication. The District administers public educational programs and receives federal financial assistance. (Doc. 22, ¶¶ 5–20). E.S. previously attended school in Carbondale Elementary School District 95, where he

allegedly received inadequate accommodations, performed poorly, and experienced educational regression. (Doc. 22, ¶¶ 22–25).

On May 5, 2023, before E.S. entered high school, Struthers met with representatives of both districts. A teacher estimated that E.S. was reading at a fourth grade level. Struthers requested one on one support, modified assignments, simplified instructions, extended time, smaller classes, and other accommodations. District 165 allegedly refused those requests and recognized only ADHD despite medical documentation of additional disabilities. (Doc. 22, ¶¶ 27–30).

Struthers enrolled E.S. at Brehm Preparatory School, a therapeutic day school. In summer 2023, neuropsychologist Dr. Michelle Kibby diagnosed E.S. with learning disabilities in reading, writing, math, ADHD, and developmental coordination disorder. She recommended daily structured literacy, collaborative speech services, and a specialized school such as Brehm. District 165 received her evaluation and rejected the recommendations. At Brehm, E.S. earned As and Bs with one-on-one support and made documented academic gains. (Doc. 22, ¶¶ 32–36).

In fall 2024, E.S. was diagnosed with juvenile Huntington's disease. On November 15, 2024, Struthers provided the District with a letter from his neurologist recommending continued placement at Brehm. At a February 3, 2025 meeting attended by District 165, Brehm staff, Struthers, and a medical social worker, District 165 denied the recommended accommodations. (Doc. 22, ¶¶ 37–39).

The requested accommodations included instructional supports and therapeutic school placement, including continued placement at Brehm. Struthers alleges that the

District's refusals required her to pay for alternative schooling. (Doc. 22, ¶¶ 29, 38, 80, 115(d), 132). Struthers also alleges that, after she advocated for accommodations and filed complaints, the District excluded her from educational meetings and refused communications. Plaintiffs allege educational, financial, and emotional injuries arising from the refusals. (Doc. 22, ¶¶ 40–45, 101, 111).

Plaintiff filed this action in state court on September 18, 2025, and the District removed it on October 17, 2025. Plaintiffs filed the First Amended Complaint on November 20, 2025. (Docs. 1, 22). Counts I–V assert claims under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA). Counts VI–IX assert claims under the Illinois Human Rights Act (IHRA), and Count X invokes the Illinois Civil Rights Remedies Restoration Act. The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the related state claims under § 1367(a). The District's motion is fully briefed. (Docs. 25, 29–30).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8 requires a complaint to contain sufficient facts to support a plausible entitlement to relief. The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiffs' favor, but legal conclusions require factual support. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The required detail depends on context. A plaintiff need not plead an evidentiary prima facie case. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 827–29 (7th Cir. 2014).

The same federal pleading rule governs the state counts, whose substantive requirements come from Illinois law. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Review is confined to the complaint and materials properly considered with it. *Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 591 (7th Cir. 2012).

Rule 12(f) permits the court to strike redundant, immaterial, impertinent, or scandalous matter from a pleading. It also permits striking a request for damages that the governing law does not allow. *Delta Consulting Group, Inc. v. R. Randle Construction, Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

## III. Analysis

### A. Timeliness

The District argues that the two-year limitations period bars all claims arising before September 18, 2023. (Doc. 25, pp. 3–5). The federal claims borrow Illinois's personal injury limitations period and minority tolling rule. 735 ILCS 5/13-202, 13-211(a); *Scherr v. Marriott International, Inc.*, 703 F.3d 1069, 1075–76 (7th Cir. 2013); *Hardin v. Straub*, 490 U.S. 536, 538–4. The District argues that Section 13-211(a) gives families two alternatives: a parent may sue on the child's behalf within the ordinary limitations period, or the child may wait until adulthood and invoke minority tolling. On that reading, Struthers cannot rely on E.S.'s minority because she has remained capable of filing suit for him. The District thus treats the decision to proceed through a next friend as forfeiting the extended filing period that E.S. otherwise would possess. (Doc. 30, pp. 2–3). That argument confuses the person entitled to relief with the representative authorized to

pursue it. E.S. was a minor when his claims arose and remains one. (Doc. 22, ¶ 5). Rule 17(c) permits Struthers to litigate those claims for him; it neither transfers them to her nor removes his minority. Illinois law therefore preserves tolling despite a representative's ability to sue or actual commencement of litigation. *Gavlin v. Adventist Bolingbrook Hospital*, 2022 IL App (3d) 200282, ¶¶ 19, 22–24. E.S.'s federal claims are timely under the applicable minority tolling rule.

Struthers's individual federal claims concern exclusions from meetings and unanswered communications whose dates are unspecified. (Doc. 22, ¶¶ 101, 111). Dismissal on limitations grounds requires the complaint to establish the defense. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir.2004)). Because the allegations do not place those acts outside the limitations period, the motion to dismiss the individual federal claims as untimely is **DENIED**.

For the IHRA claims, the District invokes the two-year civil action limitations period in 775 ILCS 5/10-102(A)(1). (Doc. 25, pp. 4–5). Section 10-101 expressly limits that provision to Article 3 claims, which concern real estate transactions. Plaintiffs' school-services claims arise under Article 5 and follow Article 7A's charge filing procedures. 775 ILCS 5/7A-101, 7A-102. The District's proposed cutoff, calculated under Section 10-102 from the lawsuit's filing date, therefore does not establish that these claims are untimely. The motion to dismiss them on that ground is **DENIED**.

### B. Responsibility before enrollment

The District also argues that any responsibility it had toward E.S. began only when E.S. entered high school. (Doc. 25, pp. 5–6). The School Code makes a high school district financially responsible for eligible children with disabilities beginning at age fifteen and provides for information exchange and placement decisions beginning at age fourteen and one-half. 105 ILCS 5/14-6.01. Those duties can precede enrollment. District 165 allegedly participated in the May 2023 meeting and refused accommodations, and the complaint does not establish E.S.'s age at that meeting. (Doc. 22, ¶¶ 26–30). His pre-enrollment status therefore supplies no basis for dismissing the claims arising from the District's own decisions, and the motion to dismiss on that ground is **DENIED**.

C. **COUNTS I–III PROPERLY STATE FEDERAL DISABILITY DISCRIMINATION CLAIMS**

E.S. alleges that the District denied him educational access by refusing accommodations for his learning disabilities. Count I invokes Section 504, and Counts II and III invoke Title II of the ADA. The District argues that the allegations describe disagreement over educational services and fail to support intentional discrimination. (Doc. 25, pp. 6–10).

Section 504 prohibits a federally funded program from denying an otherwise qualified person its benefits solely because of disability; Title II prohibits a public entity from denying a qualified person its services by reason of disability. 29 U.S.C. § 794(a); 42 U.S.C. § 12132. Both require reasonable accommodations necessary for meaningful access. *Shaw v. Kemper*, 52 F.4th 331, 334–35 (7th Cir. 2022). Necessity turns on whether the requested accommodation addresses a disability related barrier to participation. Reasonableness considers the accommodation's effectiveness and the burdens or changes

it would impose on the program. *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 751–54 (7th Cir. 2006) (en banc). Claims requesting compensatory damages require intentional discrimination, which is satisfied by showing deliberate indifference on the part of the defendant. Deliberate indifference, in turn, requires actual knowledge that a violation of the protected right was substantially likely and a deliberate failure to act on that likelihood. *Lacy v. Cook County*, 897 F.3d 847, 862–63 (7th Cir. 2018); *Shaw*, 52 F.4th at 334.

E.S.'s learning disabilities affect his reading, writing, and concentration, and he allegedly approached high school reading at a fourth-grade level. (Doc. 22, ¶¶ 17–18, 27–28). Accommodations including simplified instructions, modified assignments, additional time, and individual support would help him understand and complete schoolwork. Structured literacy instruction would address his reading limitations that impede his use of instructional materials. (Doc. 22, ¶¶ 29, 34). These adjustments plausibly provide a reasonable means of participating in the District's educational program. The allegation that he achieved significant academic gains with individual support further demonstrates the requested adjustments' effectiveness. (Doc. 22, ¶ 36). The District allegedly refused the requested accommodations, leaving the identified disability related barriers in place. (Doc. 22, ¶¶ 30, 35, 40–41). The District's assertion that it offered adequate services presents a factual dispute with those allegations. (Doc. 25, pp. 8–9, 13). Together with E.S.'s properly alleged eligibility for the requested services and the District's status as a federally funded public entity, these facts plausibly allege the access violations asserted in all three counts. (Doc. 22, ¶¶ 5–20, 50–52, 65–69, 80–84).

In addition, the alleged notice and refusals also support deliberate indifference. As alleged, District 165 learned of the fourth grade reading level at the meeting held to address E.S.'s transition to high school. Knowing this, it nevertheless refused the specified accommodations, recognizing only ADHD despite documentation of additional disabilities. It later received Dr. Kibby's evaluation identifying the reading, writing, and mathematics disabilities and again denied accommodations. (Doc. 22, ¶¶ 27–35). These communications identified the limitations obstructing E.S.'s use of instruction and the supports directed at those limitations. The repeated refusals permit an inference in E.S.'s favor that the District knew meaningful access was substantially likely to be denied without accommodations and deliberately left those barriers unaddressed. E.S. has therefore plausibly alleged deliberate indifference, and the motion to dismiss Counts I–III is **DENIED**.

### D. COUNTS IV AND VIII LACK FACTS SUPPORTING DISCRIMINATORY CAUSATION

Struthers alleges that the District excluded her from educational meetings and refused to answer her communications because of her association with E.S. The District disputes both a personal injury on the part of Struthers and a discriminatory cause for the exclusion and refusal to communicate. (Doc. 25, pp. 13–15). Title II and the IHRA protect against discrimination because of a known association with a person with a disability. 28 C.F.R. § 35.130(g); 775 ILCS 5/1-103(I)(2). Exclusion from participation in her child's education identifies an injury to Struthers's own interests. (Doc. 22, ¶¶ 101–102). Her attendance at two identified meetings is consistent with exclusion from other meetings. (Doc. 22, ¶¶ 27, 39, 101).

But the claims also require facts connecting that exclusion to the protected association, here, her association with E.S. Struthers alleges that the District knew she was E.S.'s mother and generally allowed parents of nondisabled children to participate in educational decisions. (Doc. 22, ¶¶ 21, 99–105, 148–150). The asserted comparison gives no circumstances of those parents' participation that connect the different treatment to their children's disability status. The complaint identifies advocacy and complaints followed by restrictions on Struthers's participation. That sequence could support a reasonable inference of retaliation for that advocacy, but the complaint supplies no comparable factual context for its assertion that her association with E.S. itself prompted those restrictions. (Doc. 22, ¶¶ 101, 110–114, 145–150). Counts IV and VIII are **DISMISSED** without prejudice.

E. **COUNTS V AND IX STATE RETALIATION CLAIMS AS TO STRUTHERS BUT NOT E.S.**

Both plaintiffs allege retaliation for requesting E.S.'s accommodations and challenging the District's treatment of E.S. The District disputes any protected activity by E.S., that the District engaged in materially adverse conduct, and that any adverse conduct was the result of a retaliatory cause. (Doc. 25, pp. 10–13). The ADA and IHRA require protected activity known to the defendant, materially adverse conduct, and a causal connection between them. 42 U.S.C. § 12203(a); 775 ILCS 5/6-101(A); *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 634–35 (2006). A parent's requests for accommodations for her child are protected activity. *Stanek v. St. Charles Community Unit School District No. 303*, 783 F.3d 634, 643 (7th Cir. 2015).

Struthers requested accommodations and complained about the District's treatment of E.S. The District allegedly responded by excluding her from meetings and cutting off communications about his education. (Doc. 22, ¶¶ 29, 38, 42–43, 110–114, 154–160). Those restrictions would deter a reasonable parent from further advocacy and thus satisfy the material-adversity standard. *Henry v. Milwaukee County*, 539 F.3d 573, 586 (7th Cir. 2008). The alleged restrictions targeted the meetings and communications through which Struthers advocated, permitting an inference that the District sought to deter that advocacy. (Doc. 22, ¶¶ 110–114, 154–157); *Stanek*, 783 F.3d at 643. The motion to dismiss Struthers's claims under Counts V and IX is **DENIED**.

On the other hand, E.S.'s claims identify the accommodation refusals themselves as the retaliation. Even assuming that requests made through his guardian count as his own protected activity, the complaint must still allege a plausible connection between those refusals and a purpose to punish or deter those requests. The District allegedly denied the requested educational supports at the initial meeting and continued to reject recommendations. (Doc. 22, ¶¶ 27–39). The continued refusals support the accommodation claims, but without more they do not support an inference that the District denied the supports because of the requests or later complaints. The allegations of retaliatory motive simply add a conclusory label to that sequence. (Doc. 22, ¶¶ 113–115, 159–160). E.S.'s claims under Counts V and IX are therefore **DISMISSED** without prejudice.

### F. COUNTS VI AND VII STATE IHRA ACCOMMODATION CLAIMS

E.S. alleges disability discrimination and failure to accommodate under the IHRA. The District argues that the school-specific provisions in Article 5A of that Act supply no disability claim and that the allegations fail to identify actionable discrimination. (Doc. 25, pp. 11–13). However, Article 5 expressly includes nonsectarian secondary schools as public accommodations and prohibits disability based denial of their services. 775 ILCS 5/5-101(A)(11), 5-102(A). District 165 operates such a school, and the operation of that school is the express subject of this case, bringing these claims within Article 5. (Doc. 22, ¶¶ 9–13).

The IHRA's accommodation analysis follows the ADA's. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022). As explained in Section C, E.S's learning limitations, corresponding instructional accommodation requests, and alleged refusals plausibly establish a failure to provide reasonable accommodations necessary for educational access. (Doc. 22, ¶¶ 27–35, 119–123, 132–140). Those concrete allegations also identify the conduct challenged under the state statute. The motion to dismiss Counts VI and VII is, therefore, **DENIED**.

### G. THE ALLEGED FEDERAL VIOLATIONS SUPPORT COUNT X

Count X seeks state-law remedies for the alleged federal violations, including emotional damages unavailable under the federal counts. It provides a separate state law basis for recovery, for the same federal law violation. 775 ILCS 60/15, 20. The District argues that Count X fails because Plaintiffs have not stated a Section 504 or Title II claim. (Doc. 25, p. 15). Because the adequately pleaded federal claims discussed in Section C supply the violations on which Count X rests, (Doc. 22, ¶¶ 162–166), the motion to dismiss Count X is **DENIED**.

H. **Requests to strike**

The District requests the Court strike the federal punitive and emotional damages requests under Federal Rule of Civil Procedure 12(f). (Doc. 25, pp. 15–16). Punitive damages are unavailable under Section 504 and Title II. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Section 504 also excludes emotional damages. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). Title II incorporates Section 504's remedies, and the ADA's public-services retaliation provision adopts Title II's remedies. 42 U.S.C. §§ 12133, 12203(c); *Hammond v. Cahokia Unit School District 187*, No. 3:25-cv-01283-DWD, Doc. 35, at 18–19 (S.D. Ill. Mar. 27, 2026). Thus, punitive and emotional damages are unavailable for all claims under Counts I–V. The requests for punitive and emotional damages under Counts I–V are therefore **STRICKEN** under Rule 12(f).

The IHRA, conversely, expressly authorizes damages for emotional suffering. 775 ILCS 5/8A-104(B). Plaintiffs' emotional damages request under the IHRA therefore survives the District's reliance on federal remedial limits. The District also asks to strike punitive damages under the Restoration Act because the statute does not explicitly list punitive damages as authorized under that Act. (Doc. 25, p. 16). However, Section 20 authorizes all remedies available at law and expressly makes its enumeration nonexclusive. 775 ILCS 60/20. The omission identified by the District therefore does not establish a prohibition. *Hammond*, Doc. 35, at 19. The motion to strike the state-law damages requests on those grounds must therefore be **DENIED**.

The District also argues that, to the extent Plaintiffs seek relief that is available under the Individuals with Disabilities Education Act (IDEA), Plaintiffs had to complete

the administrative procedures of that Act before bringing this suit. (Doc. 25, pp. 16–17). Plaintiffs seek compensatory damages, which IDEA does not provide and which therefore require no IDEA exhaustion. *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 147–50 (2023). Plaintiffs also request declarations that the District violated Section 504 and the ADA, while disclaiming prospective educational relief. (Doc. 22, Counts I–V, prayers for relief; Doc. 29, p. 12). Even assuming the requested declarations would require IDEA exhaustion, non-exhaustion remains an affirmative defense that the complaint does not factually establish. *Mosely v. Board of Education of the City of Chicago*, 434 F.3d 527, 532–33 (7th Cir. 2006). The Rule 12(f) request to strike on the basis of non-exhaustion under the IDEA is **DENIED**.

Finally, the District asks to strike allegations concerning District 95 and special education discussions. (Doc. 25, pp. 5–6, 16–17). The academic difficulties E.S. experienced prior to his engagement with the District, and the later accommodation discussions, describe E.S.'s learning barriers. They help establish what information had been supplied to District 165, and thus bear on what inferences are reasonable in light of its response. (Doc. 22, ¶¶ 22–39). Their relevance to access and deliberate indifference warrants retaining them. The motion to strike those allegations is **DENIED**.

## I. AMENDMENT AND JOINDER

Additional facts could supply the causal connections missing from Struthers's association claims and E.S.'s retaliation claims. Plaintiffs may amend those claims within 28 days after entry of this Order. FED. R. CIV. P. 15(a)(2); *Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Because the complaint does not identify when or in what circumstances Struthers's exclusion from participation occurred, the Court seeks clarification of their connection to the accommodation decisions underlying E.S.'s claims. The parties shall address whether E.S.'s claims and Struthers's individual claims satisfy Rule 20(a)(1), specifically identifying the relevant common transactions and all common questions between E.S. and Struthers's cases. They shall also address whether severance under Rule 21 or separate trials under Rule 42(b) would promote efficient resolution and avoid prejudice. The parties shall file their briefs within 14 days after the amendment deadline.

## IV. CONCLUSION

Defendant's motion (Doc. 24) is **GRANTED IN PART** and **DENIED IN PART**. Counts IV and VIII and E.S.'s claims under Counts V and IX are **DISMISSED WITHOUT PREJUDICE**, with leave to amend. The punitive and emotional damages requests under Counts I–V are **STRICKEN**. The motion is **DENIED** in all other respects.

**SO ORDERED.**
Dated: September 28, 2026

DAVID W. DUGAN
United States District Judge